UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DANIEL ALLEN,

    Plaintiff,

    v.                                     CAUSE NO. 3:23-CV-47-JD-MGG

WEXFORD OF INDIANA, LLC, et al.,

    Defendants.

OPINION AND ORDER

Daniel Allen, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Allen alleges that unknown defendants failed to protect him, and that critical medical care following an attack was inappropriately delayed. He has sued ten defendants: Wexford of Indiana, LLC, Shalana R. Serifert, LPN, James R. Cattin, LPN, Kimberly Myers, APN, Noe Marandent, M.D., Pamela G. Cool, RN, John Doe #1 (Case Manager P house); John Doe #2 (Case Manager L house); John Doe #3 (Correctional Officer), and John Doe #4 (Correctional Officer).

On April 9, 2021, Allen was involved in a fight with a gang member. He was placed in restrictive housing for a time, and he was threatened by other members of the same gang while in restrictive housing. He told his aunt about the threats. In the beginning of May 2021, he returned to general population. When his aunt learned he had been returned to general population, she reached out to the facility to notify them that Allen was in danger. Sometime in May, John Doe #1 called Allen to his office to discuss the matter. Allen told John Doe #1 about the threats and asked for protective custody. John Doe #1 indicated that Miami Correctional Facility does not have a protective custody unit and he was just going to have to deal with his problems. When Allen asked to speak with John Doe #1's supervisor, John Doe #1 threatened to have him housed in a cell with a member of the gang that was threatening him, and he asked Allen to leave. Shortly thereafter, Allen was moved to a new cell where he was housed with a member of the same gang as the individual he fought with on April 9, 2021.

In late May 2021, Allen spoke with John Doe #2 about his need for protective custody due to being housed with a member of the same gang as the person he fought with in April. John Doe #2 said he did not have time to deal with Allen's safety concerns, and he would see him when he returned to work. Allen asked to be moved to segregation, but John Doe #2 refused his request.

On May 28, 2021, Allen's cellmate and several other gang members attacked him in retaliation for the April 9, 2021, incident. They threatened to kill Allen if he said anything about the attack. While Allen was cleaning up after the attack, he witnessed John Doe #3 and John Doe #4 confiscate a homemade weapon from his cellmate.

2

Pursuant to the prison's policies, a conduct report should have been issued and his cellmate should have been taken to segregation, but that did not occur.[1] Less than thirty minutes later, Allen's cellmate stabbed him eight times with a different weapon.

When an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). "[P]risons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Giving Allen the benefit of all reasonable inferences, it can plausibly be inferred that John Doe #1, John Doe #2, John Doe #3, and John Doe #4 were each deliberately indifferent to Allen's safety, and he will be permitted to proceed on these claims. The Warden of the Miami Correctional Facility will be added as a defendant for purposes of identifying the unknown defendants.

---

[1] To the extent that Allen is suing John Doe #3 and John Doe #4 for failing to follow prison policies, the complaint does not state a claim. Allen does not have a constitutional right to have IDOC policies followed. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.").

Allen's injuries were initially assessed by LPN James R. Cattin around 11:17 a.m. Allen alleges that LPN Cattin knew about his chest wound and knew that Allen was reporting difficulty breathing, but he refused to initiate an emergency medical response as required by the prison's policy. Allen asked Cattin to send him to the hospital; Cattin said he would not send him to the hospital because it would cost Wexford too much.

LPN Shalana Seifert assessed Allen at 1:29 p.m. Allen told LPN Seifert about the chest wounds and difficulty breathing and she too failed to initiate an emergency response. LPN Seifert allegedly refused to suture a wound on Allen's eyebrow because he would not stop asking about going to the hospital. Records indicate that he refused sutures for his eyebrow, but he disputes this.

At 1:54 p.m., Allen was admitted to the infirmary on order of Advanced Practice Nurse ("APN") Kimberly Myers. When Myers assessed Allen, she found dyspnea, cyanosis, cough, and accelerated respiration. APN Myers still refused to send Allen to the hospital. Notes indicate he would be seen by the doctor four days later, on Tuesday. ECF 1-1 at 11.

On May 31, 2021, Allen had a skilled care visit with RN Pamela G. Cool. Allen asked to see mental health. Allen told RN Cool that he was passing blood in his stool. She allegedly refused to contact mental health on his behalf[2] or provide care for his symptoms.

---

[2] Allen does not indicate that he made any effort to contact mental health. It is not deliberate indifference to insist an inmate follow administrative procedures to receive medical care for non-urgent matters. *See Lewis v. McLean*, 941 F.3d 886, 894 (7th Cir. 2019) ("Nurse McLean did not think emergency care was necessary when Mr. Lewis could move his limbs, breathe, and talk; in other words, she exercised her professional judgment. A treatment decision that's based on professional judgment cannot evince deliberate indifference." (quotation marks and brackets omitted)); *Rankin v. Baker*, 770 F. App'x 752, 754-

4

On June 1, 2021, Allen had an appointment with Dr. Noe Marandet. Allen told Dr. Marandet about both his mental health concerns and the blood in his stool. Dr. Marandet indicated that he was not mental health and could not do anything about that, but he would run some tests regarding the blood in his stool. When Dr. Marandet received Allen's results the next day, he ordered that Allen be sent to the emergency room. At the hospital, Allen was diagnosed with a punctured lung, a broken nose, and multiple fractures of his ribs. He had lost extensive blood and needed a transfusion.

Once Allen returned to the prison, he saw Dr. Marandet again on June 7, 2021. Allen again indicated he needed mental health treatment. Dr. Marandet told Allen to toughen up. Allen also asked Dr. Marandet why it took so long to get him the care he needed after he was stabbed. Dr. Marandet allegedly indicated that, because Wexford's contract was ending, and they did not want anyone to send inmates to the hospital and increase their costs. Allen received no mental health care until Wexford's contract ended.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is

---

55 (7th Cir. 2019) (concluding "[a] reasonable jury . . . could not find that Dr. Baker's referral to the sick-call system was blatantly inappropriate and lacked professional judgment" when he told inmate that "he treated only blood-pressure issues in the hypertension clinic unless the inmate presented an emergency, which his follicle condition and knee pain were not" (quotation marks omitted)).

"serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Neither negligence nor medical malpractice constitute deliberate indifference. *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and internal quotation marks omitted).

Here, the factual allegations of the complaint do not permit a plausible inference that LPN Shalana Seifert failed to use her medical judgment in conducting her initial assessment of Allen. However, LPN James R. Cattin knew Allen was complaining of shortness of breath and indicated that he could not go to the hospital because of the cost. APN Kimberly Myers noted dyspnea, cyanosis, cough, and accelerated respiration when she evaluated Allen. RN Pamela G. Cool and Dr. Noe Marandet had that information and knew that Allen was reporting blood in his stool. Thus, it can plausibly be inferred that LPN James R. Cattin, APN Kimberly Myers, RN Pamela G. Cool, and Dr. Noe Marandet were deliberately indifferent to his obvious and severe injuries. While further factual development may show that they were exercising their medical judgment, Allen will be permitted to proceed against LPN James R. Cattin, Kimberly Myers, APN, Pamela G. Cool, RN, and Noe Marandet, M.D.

Allen has also sued Wexford of Indiana, LLC, the private company that provided health care services to IDOC inmates at the time of Allen's injury, for having a policy of denying essential medical care to save money. A private company may be held liable for constitutional violations when it performs a State function. *West v. Atkins*, 487 U.S. 42 (1988). A private company providing medical care in a prison performs a State function and can be held liable under the standard established in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). But a corporation "cannot be held liable under § 1983 on a *respondeat superior* theory." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Rather

7

corporate liability exists only "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Id.*

As noted by the Seventh Circuit, "administrative convenience and cost may be, in appropriate circumstances, *permissible factors* for correctional systems to consider in making treatment decisions." *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011) (emphasis in original). The Constitution is only violated when those factors are considered "*to the exclusion of reasonable medical judgment* about inmate health." *Id.* (emphasis in original). It can plausibly be inferred from Allen's complaint that, as the end of its contract with the IDOC approached, Wexford had a policy of considering cost savings to the exclusion of reasonable medical judgment. Thus, Allen will be permitted to proceed against Wexford of Indiana, LLC.

For these reasons, the court:

(1) GRANTS Daniel Allen leave to proceed against John Doe #1; John Doe #2; John Doe #3; and John Doe #4 in their individual capacities for compensatory and punitive damages for deliberate indifference to his safety in May 2021, resulting in attacks by other inmates on May 28, 2021, in violation of the Eighth Amendment;

(2) GRANTS Daniel Allen leave to proceed against LPN James R. Cattin, Kimberly Myers, APN, Pamela G. Cool, RN, and Noe Marandet, M.D., in their individual capacities for compensatory and punitive damages for deliberate indifference to his serious physical injuries following an attack by another inmate, in violation of the Eighth Amendment;

8

(3) GRANTS Daniel Allen leave to proceed against Wexford of Indiana, LLC, for compensatory and punitive damages for having a policy of encouraging its staff to deny necessary but costly medical care at the end of its contract with the IDOC, resulting in delayed emergency medical treatment for the serious physical injuries Allen sustained following an attack by another inmate, in violation of the Eighth Amendment;

(4) DIRECTS the clerk to add the Warden of the Miami Correctional Facility in his official capacity as a defendant only for the purpose of identifying the unknown officer;

(5) DISMISSES all other claims;

(6) DISMISSES LPN Shalana Seifert;

(7) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) LPN James R. Cattin, Kimberly Myers, APN, Pamela G. Cool, RN, Noe Marandet, M.D., and Wexford of Indiana, LLC at Wexford of Indiana, LLC, with a copy of this order and the complaint (ECF 1);

(8) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Warden of the Miami Correctional Facility at Indiana Department of Correction with a copy of this order and the complaint (ECF 1);

(9) ORDERS Wexford of Indiana, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(10) WAIVES the Warden of Miami Correctional Facility's obligation to file an answer to the complaint;

(11) ORDERS the Warden of Miami Correctional Facility to appear and identify John Doe #1; John Doe #2; John Doe #3; and John Doe #4 by or before **December 21, 2023**, or show cause why he is unable to do so;

(12) GRANTS Daniel Allen until **January 22, 2023**, to amend his complaint to name the previously unknown correctional officer identified by the Warden of the Miami Correctional Office; and

(13) ORDERS, under 42 U.S.C. § 1997e(g)(2), LPN James R. Cattin, Kimberly Myers, APN, Pamela G. Cool, RN, Noe Marandet, M.D., and Wexford of Indiana, LLC, to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on November 7, 2023

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT